## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **KIMBERLY JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | **1:24-CV-04531-VMC-CMS** |
| **EMORY HEALTHCARE, INC. ,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

In her response to Defendant Emory Healthcare, Inc.'s ("EHC" or "Defendant") summary judgment motion, Plaintiff attempts to manufacture disputes of material fact with her contradictory declaration testimony, distortion of the record evidence, and conclusory assertions. Plaintiff also fails to offer evidence that Defendant's business reason for cancelling her temporary nursing assignment was a pretext for unlawful retaliation. Instead, Plaintiff merely quarrels with the wisdom of EHC's decision and invites this Court to sit as a "super personnel department" and second-guess EHC's nurse manager's clinical judgment. As demonstrated below, Plaintiff has failed to meet her burden of establishing that EHC's decision to end her temporary assignment was the result of intentional retaliation, and summary judgment is warranted in EHC's favor.

1

## I.    Plaintiff's Declaration Testimony Contradicting Her Deposition Testimony Should Be Disregarded by the Court.

At the summary judgment stage, when a party's deposition testimony negates the existence of any genuine issue of material fact, the party cannot thereafter create such an issue with an affidavit or declaration contradicting prior deposition testimony. See Van T. Junkins & Assoc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984). The Eleventh Circuit instructs that when faced with an affidavit or declaration in which a party changes his or her testimony without adequate explanation, a court "may disregard" it as "[s]uch an affidavit would be a sham." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003). Id. at 656. For purposes of the sham affidavit analysis, declarations are treated the same as affidavits. See Shabazz v. Burlington Coat Factory Warehouse Corp., No. 1:12-cv-00409-JOF, 2013 U.S. Dist. LEXIS 201378, at *l (N.D. Ga. Feb. 12, 2013) ("The court recognizes that the use of a later-filed declaration to 'correct' deposition testimony has become an increasingly popular technique to attempt to fend off motions for summary judgment. The Eleventh Circuit, however, has repeatedly stated that  such affidavits must not be considered when they are a 'sham' and directly contradict statements made in the deposition.") (citation omitted).

"The main practical reason supporting the sham affidavit doctrine is that prior depositions are more reliable than [declarations.]" Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247 (3d Cir. 2007); see also Knight v. Miami-Dade Cnty., No. 09-

23462, 2012 U.S. Dist. LEXIS 194475, at *14 (S.D. Fla. Aug. 6, 2012). Indeed, the deposition of a witness will usually be more reliable than his affidavit because the deponent was cross-examined by opposing counsel. See Sears v. PHP of Alabama, Inc., 2006 U.S. Dist. LEXIS 18460, at *11 (M.D. Ala. Apr. 10, 2006) ("the general view of courts [is] that deposition testimony is more reliable than affidavit testimony, given that the testimony of the deponent generally has been scrutinized through cross-examination.").

EHC argued in its moving brief that Plaintiff's retaliation claims failed for the simple reason that Plaintiff only raised patient and workplace safety complaints in her only conversation with EHC's Assistant Nurse Manager, Morgan Buckovich, and therefore never opposed an unlawful employment practice under Title VII of the Civil Rights Act of 1964 ("Title VII") or 42 U.S.C. § 1981 ("Section 1981"). (Doc. 22-1 at 12-15).  In response, Plaintiff submitted a declaration where she testified, for the first time, that she told Ms. Buckovich that she, "was being put in this position because I was an African-American nurse" and Ms. Buckovich responded that white nurses are also required to perform dialysis on EHC's patients.[1] (Doc. 27-4, ¶ 10).

---

[1] Plaintiff also offers her conclusory testimony that, "in my experience African-American nurses are held to a higher standard" but she does not maintain that she conveyed this observation to Ms. Morgan. (Doc. 27-4, ¶ 10).  Plaintiff's conclusory testimony about "higher standards" for black nurses should also be disregarded by the Court in ruling on EHC's summary judgment motion. See, e.g., Smith v. Fed. Express Corp., 191 Fed. Appx. 852, 855 (11th Cir. 2006) (finding that "there [was] no evidence to support [the plaintiff's] assertion other than his own self-serving statements, which cannot defeat [the defendant's] summary judgment motion")' James v. City of Montgomery, 823 Fed. Appx. 728, 731 (11th Cir. 2020) (affirming district court's decision to

Plaintiff's declaration violates the sham affidavit rule because she testified at her deposition that she could not recall anything that she said to Ms. Buckovich during their only call other than discussing the dialysis training on the unit, employee and patient safety, workplace violence concerns and her schedule the following week (Doc. 24 at 109-115, 125-126). Plaintiff's deposition testimony, that she not could remember anything else she discussed with Ms. Buckovich is inherently inconsistent with her declaration testimony that she was being required to perform dialysis on patients because of her race. The declaration, filed after her deposition had been taken and discovery had closed, supplied a specific fact that Plaintiff could not recall when questioned on deposition. Notably, Plaintiff's declaration presented no reason for her subsequent recollection of mentioning "being put in this position" because of her race to Ms. Buckovich. For these reasons, the Court should disregard paragraph 10 of Plaintiff's declaration. See Clark v. Johnson Controls World Services, Inc., 939 F. Supp. 884, 887 (S.D. Ga. 1996) (plaintiff's deposition that she could not recall discriminatory treatment as to job duties was inherently inconsistent with "contradictory and unexplained statement in her . . . affidavit"); Rivers v. Asplundh Tree Expert Co., 2009 U.S. Dist. LEXIS 87394 (N.D.Fla. 2009) (deposition testimony that plaintiff did not remember conversation was inherently

---

disregard affidavit testimony that white employees were better treated in unidentified ways as conclusory when "provided no specific facts" identifying the actual treatment afforded to white employees).

inconsistent with affidavit testimony recalling the conversation, without explanation for different current recollection); <u>Leeth v. Athens/Limestone Hosp</u>., No. 5:07-CV-0956-SLB, 2010 U.S. Dist. LEXIS 159724, at *5-6 (N.D. Ala. Mar. 22, 2010) (refusing to consider plaintiff's declaration testimony about additional statements made during conversation with her manager where plaintiff was unable to recall these details during her deposition).

### 2.   <u>Plaintiff's Contradictory Declaration Testimony Does Not Establish that She Opposed an Unlawful Employment Practice.</u>

Even if the Court considers Plaintiff's declaration testimony that she told Ms. Buckovich that she "was being put in this position" because of her race, summary judgment is still warranted in EHC's favor because this statement is not an objection to an unlawful employment practice.  Courts in this Circuit have routinely hold that a plaintiff does not oppose an unlawful employment practice by reporting general complaints of unfairness, even if race is mentioned, without connecting those complaints to illegal acts of employment discrimination under Title VII.[2] <u>See Bowens v. Escambia County Bd. of Educ.</u>, No. 20-532-CG-B, 2022 U.S. Dist. LEXIS 62172, at *7 (S.D. Ala. April 4, 2022) (holding that an email raising "racial

---

[2] Plaintiff statement to Ms. Buckovich that African-Americans patients are "subjected to disparate treatment in healthcare" (Doc. 27-4, ¶ 7) is not an objection to an unlawful employment practice because EHC's patients are not employees. <u>See Jackson v. Motel 6 Multipurpose, Inc.</u>, 130 F.3d 999, 1007, fn. 16 (11th Cir. 1997) (observing that employees' retaliation claims failed as a matter of law because they opposed the hotel's policy to discriminate against hotel customers, not employees).

equity" concerns is not statutorily protected activity); Hill v. IGA Food Depot, Case No. 204CV0096, 2006 U.S. Dist. LEXIS 80455, at *5 (M.D. Ala. Nov. 2, 2006) (plaintiff did not demonstrate supervisor had reason to know he was complaining about an illegal employment practice where plaintiff asked his manager why the store had fewer African-American cashiers than was proportionate to its customer base).

Even if Plaintiff's vague statement to Ms. Buckovich about "being put in this position" due to her race could be construed as an objection to an unlawful employment practice, her retaliation claims still fail because she adduced no evidence that her purported complaint was based on a "good faith, reasonable belief". See Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999). The Eleventh Circuit has held that a plaintiff's burden includes both a subjective and objective component. See Butler v. Ala. Dept. of Transp., 536 F.3d 1209, 1213 (11th Cir. 2008). Plaintiff must not only show that she *subjectively* (that is, in good faith) believed that EHC was engaged in an unlawful employment practice, but also that her belief was *objectively* reasonable in light of the facts and record presented. Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997).

Plaintiff has not produced any evidence showing her belief that she was experiencing race discrimination was objectively reasonable. Plaintiff's only "evidence" consists of unsupported assertions of discrimination which are

insufficient, as a matter of law, to defeat EHC's dispositive motion.  Tiggs-Vaughn v. Tuscaloosa Housing Auth., 385 Fed. Appx. 919, 923 (11th Cir. 2010) (observing that conclusory allegations or unsupported assertions of discrimination are not evidence of discrimination). For example, Plaintiff argues that "most nurses assigned to nights shifts and high-burden units" at EHC are black, but she merely testified that most of the travel nurses on the night shift on one of her temporary assignments at EHC were black. (Compare Doc. 27-3 at 9 with Doc. 24 at 81-82). Likewise, Plaintiff insists that unidentified white nurses were not required to administer dialysis and that traveling nurses, "many of whom were Black, were prohibited from performing" dialysis but this testimony appears nowhere in the record. (Compare Doc. 27-3 at 9 with Doc. 24 at 41-43).

Based on the undisputed record evidence in this case, Plaintiff's subjective belief that EHC was engaged in unlawful race discrimination by requiring her to perform dialysis on Nephrology patients, and providing her with her four hours of training before her assignment began, was not objectively reasonable. At the time that Plaintiff spoke with Ms. Morgan on January 19, 2023, all nurses (including travel nurses) working in the Nephrology Unit were required to administer dialysis to EHC's patients, and Plaintiff was well aware of this fact.  (Doc. 24 at 87, 95-96, 100; Doc. 24-12; Doc. 24-13, p. 1; Doc. 24-19, p. 1). Ms. Buckovich testified that, while she was the Assistant Nurse Manager, all new nurses on the Nephrology Unit,

regardless of whether they were an EHC nurse or a travel nurse, received four hours of training. (Doc. 25 at 13).

Plaintiff has offered no evidence of Ms. Buckovich excusing any nurse from dialysis duties, and provided no evidence of Ms. Buckovich providing any travel nurse with more than four hours of dialysis training. Finally, although Plaintiff observed animosity between the nurses employed by EHC and the travel nurses employed by staffing companies, she testified that she attributed this tension to the fact that travel nurses are paid more than EHC staff nurses. (Doc. 24 at 59). Under these circumstances, Plaintiff's belief that she was being required to provide dialysis to Nephrology patients because of her race, was not objectively reasonable. Accordingly, Plaintiff has failed to demonstrate she engaged in any statutorily protected expression, and her retaliation claims fail as a matter of law. See Bender v. Miami Shores Vill., 578 Fed. Appx, 822 (11th Cir. 2014) (affirming dismissal of plaintiff's retaliation claims after concluding that plaintiff's belief that she was subjected to race discrimination was not objectively reasonable because all employees in plaintiff's department were required to perform additional duties after death of supervisor and plaintiff did not receive a bonus because she did not take on additional work like her peers did).

### 3.    Plaintiff Failed to Address EHC's Causal Connection Argument in Her Opposition Brief.

EHC argued in its principle brief that Plaintiff's communications with Ms.

Buckovich the day after their call on January 19, 2023 severed any causal connection between Plaintiff's patient and workplace safety complaints and Ms. Buckovich's decision to cancel her temporary assignment because she did not believe that Plaintiff would be able to learn how to safely administer dialysis even if she participated in four hours of training. (Doc. 22-1 at 16-17).

Plaintiff has conceded this point inasmuch as she did not address this argument in her response brief, seemingly operating under the mistaken belief that the intervening event was Plaintiff being unqualified to perform dialysis. (Doc. 27-3 at 12-13); Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned). Plaintiff has likewise conceded this argument given that she failed to dispute that she sent the communications to Ms. Buckovich on January 20, 2023--the day after their only conversation where Plaintiff raised patient and workplace safety concerns. (Doc. 24-16, p. 1; Doc. 24-17, p. .1, 120; Doc. 25 at 11; Doc. 26 at ¶¶ 30, 31; Doc. 27-2 at ¶¶ 30, 31)[3]. Accordingly, Plaintiff cannot establish a causal connection between her safety complaints and the cancellation of her temporary assignment on EHC's Nephrology Unit.

---

[3] In violation of this Court's Order modifying Local Rule 56.1 (Doc. 13 at 10-13) did not dispute these two statements of fact with record evidence, and provided a lengthy, argumentative response. (Doc. Doc. 27-2 at ¶¶ 30, 31).

### 4.  **Plaintiff Has Failed to Produce Any Evidence of Pretext.**

Even if Plaintiff could establish a *prima facie* case of retaliation, summary judgment is nonetheless warranted in EHC's favor. Defendant has advanced a legitimate, non-retaliatory reason for why it cancelled Plaintiff's temporary assignment in one of its hospital's Nephrology units. EHC's Nephrology nurse manager, Ms. Buckovich, concluded that Plaintiff would not be able to safely administer dialysis to the unit's renal patients, even if she completed the standard four hour training program. (Doc. 25 at 11-12, 14).  In her response brief, Plaintiff failed to meet her evidentiary burden of producing probative, admissible evidence that this reason was pretextual, which dooms her retaliation claims under the *McDonnell Douglas* or convincing mosaic framework.[4] See Bogle v. Ala. Law. Enf't Agency, No. 23-13947, 2024 U.S.App. Lexis 27669, at *4 (11th Cir. Oct. 31, 2024) (The *McDonnell Douglas* framework and the convincing mosaic are "one and the same—both simply ways to describe the 'ordinary summary judgment standard.'")

"When a plaintiff chooses to attack the veracity of the employer's proffered reason, '[the] inquiry is limited to whether the employer gave an honest explanation of its behavior." Kragor v. Takeda Pharms. Am., Inc., 702 F.3d 1304, 1310-11 (11th Cir. 2012) (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.

---

[4] Plaintiff argues in her response brief that she is entitled to summary judgment on her retaliation claims based on the "Convincing Mosaic Standard," however, this argument is misplaced inasmuch as Plaintiff has not moved for summary judgment. (Doc. 27-3 at 14).

1991)). Provided that the proffered reason is one that might motivate a reasonable employer, the plaintiff "must meet [the] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).

Plaintiff vehemently argues that she never "refused the PD assignment or the training" and was willing to attend the dialysis training and "attempt to learn the assignment", but this reflects a flawed understanding of why Ms. Buckovich cancelled her assignment. (Doc. 27-3 at 16, 18-21). Plaintiff's assignment was not canceled for insubordination, i.e., her refusal to attend dialysis training, or her refusal to perform dialysis on a patient. Rather, Ms. Buckovich cancelled Plaintiff's temporary assignment because she believed that Plaintiff would not be able to learn how to safely administer dialysis to patients, even if after completing training, Plaintiff's willingness to attend training or "try to learn" is irrelevant and cannot call into question the honest, good-faith belief of Ms. Buckovich's stated reason. Holder v. Nicholson, 287 Fed. Appx. 784, 791 (11th Cir. 2008) (per curiam) (unpublished) (observing that the court need not determine that the employer was correct in its assessment of the employee, it need only determine that the defendant in good faith that the employee is unsuitable for employment with the defendant)

Plaintiff also suggests that Ms. Buckovich ended her temporary assignment because, on August 16, 2022, Plaintiff sent an email to her AMN recruiting

representative asking to be moved to a different assignment because a EHC nurse manager at a different hospital was a "racist."[5] (Doc. 24 at 46-49; Doc. 24-4; Doc. 24-5; Doc. 27-3 at 14-15, 19-20). Plaintiff's argument is a nonstarter given that this complaint was made to AMN  over four months before Ms. Buckovich cancelled Plaintiff's temporary assignment, and there is no evidence that Ms. Buckovich was aware of it. (Doc. 24 at 46-49, 52-53, 58-59; Doc. 24-1, p. 2).  See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)) (holding that "[a] three to four month disparity" between the statutorily protected conduct and the adverse employment action is too long to establish temporal proximity); Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (causal connection element requires plaintiff to demonstrate that the decision-maker "was aware of the protected conduct at the time of the adverse employment action").

In what can only be described as Plaintiff's most disingenuous attempt to establish pretext, Plaintiff misrepresents the timing of events on January 20, 2023 and asserts that Ms. Buckovich's email to AMN questioning if Plaintiff planned to report to work the following week (after Plaintiff indicated that she was sick and may not be able to start her assignment on time) was sent *after* Plaintiff's "reminder"

---

[5] Plaintiff misstates the record evidence inasmuch as she maintains that she raised this concern to AMN on September 13, 2022 and was "terminated within hours." (Doc. 27-3 at 19-20). The evidence shows, however, that Plaintiff raised this concern to AMN via email on August 16, 2022 and that Plaintiff continued to work in the same assignment at EHC for over a month until shortly after she refused to perform charge nurse duties, which was a requirement of all travel nurses working within the unit. (Doc. 24 at 50, 73-77, 81; Doc. 24-2,  p. 2; Doc. 24 8).

email to Ms. Buckovich that Plaintiff had no dialysis experience but would "try to learn the assignment" and would let Ms. Buckovich know if she "felt as though with no experience" that she could not perform dialysis without harming a patient. (Doc. 27-3 at 20). Plaintiff then suggests that Plaintiff's "reminder" email could not have factored into Ms. Buckovich's decision to cancel the assignment because Ms. Buckovich sought to confirm Plaintiff's start date and training schedule after receiving it. (Id.).

Plaintiff's assertion is undermined by the undisputed evidence, however, which clearly establishes the following timeline of events on Friday, January 20, 2023: (1) at 7:35 a.m. Ms. Buckovich emailed AMN to confirm that Plaintiff would be reporting to work after Plaintiff indicated she was sick and may not be able to start on time; (2) at 12:11 p.m. AMN sent Ms. Buckovich an email stating that Plaintiff would be able to start her temporary assignment on January 25, 2023; (3) at 3:52 p.m. Plaintiff sent Ms. Buckovich an email indicating that she had a personal conflict with her scheduled shifts the following weekend; and (4) at 3:55 p.m., Plaintiff sent Ms. Buckovich the "reminder" email; and (5) Ms. Buckovich contacted AMN on Monday, January 23 to cancel Plaintiff's temporary assignment.[6] (Doc.

---

[6] Plaintiff also summarily argues that she can establish pretext based on "systemic racial dynamics within Defendant's travel nurse assignments" but as explained in section 2, supra, the record is devoid of any evidence of race discrimination. Moreover, evidence of race discrimination is not probative of the ultimate issue in this case which is whether EHC's decision to cancel Plaintiff's assignment was the product of retaliation. Likewise, Plaintiff's temporal proximity pretext argument is misplaced because it is well-established that temporal proximately alone is

24-16; Doc. 24-17; Doc. 27-1 at ¶ 26; Doc. 27-9 at 1-2).  Based on this evidence, Plaintiff cannot "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [EHC's] proffered legitimate reason for its action that a reasonable factfinder could find them unworthy of credence." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (internal quotation marks omitted).

Ultimately, the "pretext inquiry focuses on the honesty of the employer's explanation; raising a question about the correctness of the facts underlying that explanation without impugning the employer's honest belief, fails to create a triable pretext issue." Dawson v. Henry Cnty. Police Dept., 238 Fed. Appx. 545, 549 (11th Cir. 2007); see also  Jackson v. Cronic, Civil Action No. 2:11-CV-0058-WCO-SSC, 2012 WL 12864368, at *17 (N.D. Ga. July 31, 2012) ("the pretext inquiry centers on what the decisionmakers believed in good faith, not the correctness of the belief.").

Here, all Plaintiff can do is question the wisdom of Ms. Buckovich's decision or argue that she was mistaken in her belief, however, Plaintiff's second-guessing of Ms. Buckovich's clinical judgment cannot establish pretext, as a matter of law because it is the employer's perceptions about the employee's job performance—

---

insufficient to establish pretext.  Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006)

even if mistaken—that matters when analyzing pretext. <u>See e.g.</u>, <u>Smelter v. S. Home</u> <u>Care Servs.</u>, 904 F.3d 1276 (11th Cir. 2018); <u>Alvarez</u>, 610 F.3d at 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs . . . not on reality as it exists outside of the decision maker's head.").  For all of these reasons and the reasons cited in EHC's principle brief, summary judgment is warranted in favor of Defendant on Plaintiff's retaliation claims under Title VII and Section 1981.


        Respectfully submitted, this 12th day of September, 2025.

                            **Lewis Brisbois Bisgaard & Smith LLP**

                            By:    */s/ Toni J. Read*
                                   Toni J. Read
                                   Georgia Bar No. 140982
                                   600 Peachtree Street NE, Suite 4700
                                   Atlanta, Georgia  30308
                                   (404) 567-6589 (telephone)
                                   (404) 467-8845 (facsimile)

                                   ***Attorneys for Defendant***

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this **DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia. Counsel hereby states that this **DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** has been typed in Times New Roman 14 count.


/s/ *Toni J. Read*
Toni J. Read